UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

CIVIL ACTION NO. 04-269-GFVT

JO ANN ALLEN, ET AL.,                                                                      PLAINTIFFS,


V.                          **MEMORANDUM OPINION
                                 AND ORDER**


HIGHLANDS HOSPITAL CORP.,                                                          DEFENDANT.


I.  INTRODUCTION

This matter is before the Court upon the motion of Plaintiffs, Jo Ann Allen, Tammy Davis, and Debra Sloan, to disqualify Vincent Candiello and Claudia M. Williams, counsel for Defendant Highland Hospital Corporation. (Record No. 69.)  This matter was previously referred to the undersigned for ruling on all non-dispositive pre-trial motions pursuant to 28 U.S.C. § 636(b)(1)(A).  (Record No. 17.)  For the reasons set forth in this opinion, said motion to disqualify counsel shall be overruled.

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs bring this action for alleged violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., and the Kentucky Civil Rights Act, K.R.S. 344.040.  (Record No. 12.)   In the course of discovery, Plaintiffs served Mary Jarvis, a

1

former employee of Defendant, with a notice of deposition and a <u>subpoena</u> <u>duces</u> <u>tecum</u> to produce and permit inspection of certain documents that, according to Plaintiffs, were relevant and discoverable.  (Record No. 70, Ex. A.)  Shortly thereafter, Defendant filed a motion for protective order requesting that Plaintiffs' notice of deposition and subpoena be quashed.[1]  (Record No. 50.)  In that motion, Defendant asserted that the documents Plaintiffs sought to obtain from Ms. Jarvis were copies of Defendant's records that Ms. Jarvis improperly took with her when her employment with Defendant ended. <u>Id</u>. at 1-3.

Pursuant to her severance agreement with Defendant (Record No. 50, Ex. C), Ms. Jarvis agreed to meet with Tom Smith, Defendant's local counsel, and Mr. Candiello prior to giving her deposition. At this meeting, a verbal exchange between Mr. Candiello and Ms. Jarvis occurred while Mr. Smith was out of the room making a copy of those documents. It is the substance of this conversation that constitutes the facts relevant to the instant motion to disqualify counsel.

The parties offer different accounts as to the exact nature of that conversation between Mr. Candiello and Ms. Jarvis.  According to Plaintiffs, Mr. Candiello attempted to coerce Ms. Jarvis into concealing those documents under subpoena by making threats of litigation and physical harm to her.  (Record No. 69.)  To substantiate that assertion, Plaintiffs cite to the following cross examination by Mr. Candiello at Plaintiffs' deposition of Ms. Jarvis:

[Mr. Candiello]:  Please let me finish the question before you answer.

---

[1] Defendant's motion for protective order was overruled on August 25, 2005.  (Record No. 71.)

[Ms. Jarvis]: He's mad at me because he prepped me for this and I'm not giving him yes and no answers. I'll try to be more – I'll get closer and listen harder. How's that?

[Mr. Candiello]: Did I prep you for anything here?

[Ms. Jarvis]: Yes.

[Mr. Candiello]: What did I say to you?

[Ms. Jarvis]: You said, please listen very carefully. Give me yes and no answers...

[Mr. Candiello]: When you could.

[Ms. Jarvis]: Well, I don't remember "when you could", but yes and no...

[Mr. Candiello]: I gave you instructions to answer question yes or no...

[Ms. Jarvis]: Yes.

[Mr. Candiello]: No matter what? No matter what?

[Ms. Jarvis]: Well, us [sic] see. I think that was the same time you threatened physical, bodily harm if I didn't turn over the documents to you...

[Mr. Candiello]: And when was that?

[Ms. Jarvis]: And I was subpoenaed. The first meeting that we had when you and me and Mr. Smith.

[Mr. Candiello]: And Mr. Smith, and we threatened bodily harm?

[Ms. Jarvis]: No. "We" did not. Mr. Smith was out of the room. He went out – you had him go out of the room and make copies of the documents.

[Mr. Candiello]: And I threatened bodily harm to you?

[Ms. Jarvis]: Well, I think you said, to me it was a threat for bodily harm. I

think you said, what if I threatened to put you on the rack or sue you or some screws or whatever. Yeah. That was a, to me, was a threat. I think that's the same time I tried to convince you that my husband was a big bad Harley rider. So, yeah, I took that as a threat. And I think I explained to you then the same as I did Mrs. Williams the last time, that at that point in time, I was under subpoena from [Plaintiffs' counsel], so I could not turn over any documents that I may have for you, but I did give you copies of all the documents that I supplied to him at our deposition.

[Mr. Candiello]: And did somebody during this same period of time threaten to pull your fingernails out?

[Ms. Jarvis]: Yeah.

[Mr. Candiello]: Who was that?

[Ms. Jarvis]: That would've been you, too, and like I said, I took it very seriously. I live in Kentucky. We...

[Mr. Candiello]: Well...

[Ms. Jarvis]: Take anything like that very seriously.

[Mr. Candiello]: I'm sure you do.

[Ms. Jarvis]: Oh, we do.

(Record No. 81, Volume 2, pp. 24-26.)

Mr. Candiello's recollection of the transpired event is markedly different. Mr. Candiello's version of the conversation characterizes the exchange as playful and devoid of any intention to threaten or apprehension of a threat. In an affidavit presented in support of his response in opposition to Plaintiffs' motion to disqualify counsel, Mr. Candiello stated as follows:

> While Attorney Smith was absent, the undersigned expressed to Ms.

Jarvis that [Defendant] believed the documents in her possession to be its property consistent with the motion [Defendant] already filed on the subject, and, on its behalf, I formally requested that she return them.

Ms. Jarvis declined the request, explaining that, upon advice of counsel, she understood that she was under legal compulsion to turn a copy of the documents over to Plaintiffs. I explained to her that the copy she was producing would be addressed by the court when it heard our motion. I explained that I was referring now to any copies that she was retaining after she complied with the subpoena. Ms. Jarvis still declined to return whatever copies she intended to keep for herself. At no time did I tell her not to comply with the subpoena or not follow her counsel's advice.

Ms. Jarvis then inquired what would occur as a result of her refusal to return her copies of the documents to [Defendant]. I explained to Ms. Jarvis that I would inform [Defendant] of her refusal. It then would be up to [Defendant] to decide what it would do next. If she would not return the documents voluntarily, then one option would be for [Defendant] to sue her for the return of its property.

Within a short time later, Attorney Smith reentered the conference room. Our discussion turned to what questions might be asked of her. Because Ms. Jarvis expressed an opinion that she believed her position elimination by [Defendant] was due to her age, I asked upon what evidence her opinion was based. I then asked that she generally not give opinions on age discrimination as that was not within her job responsibilities when employed [with Defendant]. In reply Ms. Jarvis agreed not to offer any such opinions.

As a joke, I then asked Ms. Jarvis would she give such an opinion if Plaintiffs either "pulled out her fingernails" or placed her "on the rack." Smiling, Ms. Jarvis repeated that, even with such as effort, she would not offer such an opinion. She added, while laughing, that her husband was a "biker" and would know how to protect her. At no time did I threatened [sic] to place Ms. Jarvis on the rack or to pull out her fingernails.

In short, at no time during this discussion, did I threaten Ms. Jarvis with any physical harm. More specifically, I did not threaten bodily harm to Ms. Jarvis while Attorney Smith was out of the room. I also did not intend to threaten Ms. Jarvis regarding [Defendant] suing her as I was responding to her inquiry.

(Record No. 77, Ex. A, ¶¶ 4-9.)

Circumstantially, an affidavit presented by Mr. Smith supports Mr. Candiello's

5

version of the events. Mr. Smith stated as follows:

> When the undersigned left the room to copy the documents, Ms. Jarvis had settled into what seemed to be a comfortable conversation regarding the upcoming deposition and the documents in question. When the undersigned returned to the room there was no change in the atmosphere in terms of the appearance of nervousness on the part of Ms. Jarvis.
> While the undersigned did not hear any conversation while he was out of the room, he did witness a conversation between Ms. Jarvis and Mr. Candiello in which Mr. Candiello asked Ms. Jarvis what her testimony would be if asked about age discrimination at [Defendant's] during her tenure. She expressed that she would not give any testimony regarding such an opinion. Mr. Candiello then asked, in a joking fashion, if she would testify regarding age discrimination if the other side (presumably [Plaintiffs' counsel]) either pulled out her fingernails or placed her on the rack. She again expressed that she would not testify concerning any such opinion.

(Id. at Ex. B, ¶¶ 3-4.)

By order dated November 15, 2005, upon consideration of Plaintiffs' motion to disqualify counsel and Defendant's response to the motion (Record Nos. 69 and 77), the undersigned determined that the record was inadequate for decision on the motion. (Record No. 79.) Accordingly, the undersigned directed that the deposition of Ms. Jarvis be filed of record and ordered the parties to submit supplemental briefs, with citations to relevant federal decisions. (Id.) On November 30, 2005, Plaintiffs filed a reply in support of the motion to disqualify counsel (Record No. 82), as well as the Jarvis deposition. (Record No. 81.) On December 19, 2005, Defendant filed a sur-response to Plaintiff's motion to disqualify counsel. (Record No. 84.) Thus, Plaintiffs' motion to disqualify counsel is ripe for decision.

### III. ANALYSIS

6

A.  Legal Standard

Pursuant to Rule 83.3 of the Joint Local Rules for Civil Practice for the United District Courts of the Eastern and Western Districts of Kentucky, an attorney practicing before the Court is subject to discipline by the Court upon a showing that the attorney is guilty of unprofessional conduct.  L.R. 83.3.  That Rule references the Rules of the Kentucky Supreme Court governing professional conduct as a benchmark for determining whether a breach of an attorney's ethical obligations has occurred.  See id.

In addition to the disciplinary measures set forth in L.R. 83.3, it is axiomatic that a district court has inherent authority to disqualify an attorney as a sanction for professionally unethical conduct.  See Cavender v. U.S. Xpress Enters., Inc., 191 F. Supp. 2d 962, 965 (E.D. Tenn. 2002) (noting that a court's authority to disqualify an attorney for unethical behavior derives from the local rules of the court and federal law).  Recently, the United States District Court for the Southern District of Ohio aptly summarized the varying considerations relevant to a motion to disqualify counsel for alleged breaches of professional ethical rules:

> A motion to disqualify counsel is the proper method for a party to bring an alleged breach of ethical duties to the court's attention. The power to disqualify an attorney, or attorneys, from a case is incidental to all courts, and a district court is obliged to consider unethical conduct by an attorney in connection with any proceeding before it. However, a trial court does not possess unfettered discretion to disqualify counsel. Furthermore, a violation of the rules of professional ethics does not automatically necessitate disqualification of an attorney. The extreme sanction of disqualification should only be utilized when there is a reasonable possibility that some specifically identifiable impropriety actually occurred, and where the public interest in

> requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice. While motions to disqualify may be legitimate and necessary under certain circumstances they should be viewed with extreme caution for they can be misused as techniques of harassment.

SST Casting, Inc. v. Amana Appliances, Inc., 250 F. Supp. 2d 863, 865-866 (S.D. Ohio 2002) (internal quotations and citations omitted).

As to the process by which a disqualification motion is decided, as previously stated by this Court,

> Although earlier cases in the Sixth Circuit required the District Court to conduct an evidentiary hearing on a motion to disqualify counsel (as well as providing for interlocutory appeals of the District Court's decision), see, e.g., Melamed v. ITT Continental Baking Co., 534 F.2d 82, 84-85 (6th Cir.1976), overruled on other grounds, 592 F.2d 290 (6th Cir.1979), more recent decisions have held that Melamed's directive to conduct an evidentiary hearing is not absolute. In re Petition of Mechem, 880 F.2d 872, 875 (6th Cir.1989); General Mill Supply Co. v. SCA Services, Inc., 697 F.2d 704, 710 (6th Cir.1982).

Carlsen v. Thomas, 159 F.R.D. 661, 664 (E. D. Ky. 1994). Accordingly, "the District Court may decide a disqualification motion in accordance with the decisional standards applied to motions for summary judgment." The Court should conduct a factual inquiry to the extent appropriate under the circumstances. Id. The inquiry may be conducted on affidavits and other evidence in the record as would be acceptable under Rule 56(e) of the Federal Rules of Civil Procedure, so long as the District Court does not undertake to decide disputed issues of fact. Id. The movant bears the initial burden of presenting facts sufficient to show that disqualification is warranted. Id. at 668; Bartech Industries, Inc. v. International Baking Co.,

Inc., 910 F.Supp. 388, 392 (E.D. Tenn. 1996).

    B.  Analysis

The facts upon which the instant motion to disqualify counsel is based implicate Kentucky Rules of Professional Conduct 3.4 and 8.3.  Rule 3.4 provides that an attorney "shall not unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value."  Ky SCR 3.130, Rule 3.4(a).  Rule 3.4 also prohibits an attorney from counseling or assisting another individual to perform such act.  Id.  Rule 8.3 provides that it is professional misconduct for an attorney to violate or attempt to violate the Rules of Professional Conduct or commit a criminal act that reflects adversely on the attorney's honesty, trustworthiness, or fitness as a lawyer in other respects.  Ky SCR 3.130, Rule 8.3(a)-(b).

If Ms. Jarvis' account of her conversation with Mr. Candiello is afforded full credence, Mr. Candiello's alleged conduct of attempting to obstruct access to evidence by threat of physical harm could certainly be in violation of Rules 3.4 and 8.3 of the Kentucky Rules of Professional Conduct.  However, as stated by the Court in SST Casting, violation of a rule of professional conduct is not alone sufficient to warrant disqualification of counsel.  250 F. Supp. 2d at 865-866.  When confronted with a motion to disqualify counsel, a court must weigh the competing interests of requiring professional conduct by an attorney and permitting a party to retain counsel of her choice.  See Carlsen, 159 F.R.D. at 664; Kitchen v. Aristech, 769 F. Supp. 254, 257 (S.D. Ohio 1991).  This requires the court to strike a proper balance

9

between the public interest in safeguarding an orderly judicial process and the private interests of each party.  See Carlsen, 159 F.R.D. at 664; Kitchen, 769 F. Supp. at 257.

In this case, Defendant has a clear, specific, and demonstrable interest in retaining Mr. Candiello and Ms. Williams as its counsel of choice.  Mr. Candiello and Ms. Williams have represented Defendant in this matter since obtaining pro hac vice status on September 1, 2004.  (Record No. 7.)  Thus, because Mr. Candiello and Ms. Williams are presumably well acquainted with all aspects of this litigation, Defendant would suffer substantial hardship if required to substitute counsel at this late stage in the litigation.  As a consequence, it can be fairly said that Defendant's interest in retaining Mr. Candiello and Ms. Williams is high.  See United States v. Krzyske, 836 F.2d 1013, 1017 (6th Cir. 1988) (stating that although the right to counsel of one's choice is not absolute, the right is an important one).

On the other hand, the prejudice Plaintiffs claim will ensue if Mr. Candiello and Ms. Williams are permitted to continue representing Defendant is, at this time, only speculative. Plaintiffs have offered no evidence that the threats made by Mr. Candiello, assuming the veracity of their allegations, is likely to influence Ms. Jarvis' testimony at trial.  Plaintiffs contend that even if Ms. Jarvis remains uninfluenced, a possibility exists that she and Mr. Candiello will again display their animosity for each other during her testimony, causing the jury to misinterpret Ms. Jarvis' animosity as bias towards Defendant.  The appearance of such bias, Plaintiffs argue, will reflect poorly on Ms. Jarvis' credibility.  Again, Plaintiffs offer nothing more than speculation that the alleged animosity between Mr. Candiello and Ms.

Jarvis will be apparent to the jury or that the jury will interpret any apparent animosity as bias against Defendant. Furthermore, if the prejudice claimed by Plaintiffs comes to fruition, the Court can adopt certain corrective measures, short of disqualifying Mr. Candiello, to mitigate any ill effects of the alleged animosity between Mr. Candiello and Ms. Jarvis. Therefore, because of the speculative nature of the prejudice claimed by Plaintiffs, an insufficient showing has been made to outweigh Defendant's significant interest in retaining counsel of its choice.[2]

In addition to weighing the private interests of the parties, this Court must also consider the public interest in maintaining an orderly judicial process. See Carlsen, 159 F.R.D. at 664; Kitchen, 769 F. Supp. at 257. Federal courts have the inherent authority and the obligation to maintain public trust in the legal profession and the judicial process. See D.H. Overmyer, Co. v. First Natl. Bank of Boston, 750 F.2d 31, 33 (6th Cir. 1984). Although Plaintiffs in this case have not made a sufficient showing to warrant disqualification of counsel, and assuming that Mr. Candiello's version of the conversation is correct, the undersigned feels compelled to express serious concern regarding Mr. Candiello's communications with Ms. Jarvis. Contrary to the suggestions contained in the affidavits of Mr. Candiello and Mr. Smith, the undersigned finds nothing humorous in inquiring whether

---

[2] Although the motion requests the disqualification of both Mr. Candiello and Ms. Williams, Plaintiffs allege misconduct on the part of Mr. Candiello only. Having found that Plaintiffs have made an insufficient showing to warrant disqualification of Mr. Candiello, the facts alleged by Plaintiffs certainly do not warrant disqualification of Ms. Williams. Additionally, Ms Williams subsequently withdrew as counsel for Defendant on September 1, 2005 (Record No. 73), rendering the portion of Plaintiffs' motion to disqualify her as moot.

a potential witness would succumb to torture by opposing counsel. In addition to being inappropriate and unprofessional, this type of banter is dangerous because it can lead to serious misunderstandings which, at a minimum, clearly occurred in this case. Additionally, defense counsel's remarks have presumably and thus needlessly increased his client's expenses in this case, thus implicating additional rules of ethics.

## IV.  CONCLUSION

Because Plaintiffs have shown nothing more than speculation that their case may be prejudiced by their version of Mr. Candiello's conversation with Ms. Jarvis, disqualification of defense counsel is not warranted. Therefore, Plaintiffs' motion to disqualify defense counsel shall be overruled, but without prejudice to Plaintiffs' right to renew the motion if newly discovered evidence pertaining to this incident is discovered or any misconduct warranting disqualification occurs. Accordingly, and the Court being otherwise sufficiently advised,

IT IS ORDERED THAT Plaintiffs' motion to disqualify counsel (Record No. 69) is hereby overruled without prejudice.

Signed March 30, 2006.



Signed By:
Peggy E. Patterson  PEP
United States Magistrate Judge

Date of Entry and Service: